UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| JUSTIN HOYE-HOUSE,<br>    Plaintiff,<br><br>v.<br><br>A 1998 80' S/Y GODSPEED, believed to bear Hull Identification #KDR80200H898, her engines, tackle, apparel, contents, sails, spars, rigging, electronics, bunkers, appurtenances, etc., *in rem*; ANDREW LAMBDEN; and WHEELS, LTD.,<br>    Defendants. | C.A. No. 1:23-cv-00006-JJM-LDA |

**MEMORANDUM AND ORDER**

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Before the Court is Defendants'—a 1998 80' S/Y Godspeed ("Godspeed"), Andrew Lambden, and Wheels, Ltd.—Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 9.

### I.   BACKGROUND

Mr. Hoye-House alleges that he injured himself aboard Godspeed when he slipped and fell because of a defective hatch. ECF No. 1 at ¶¶ 8-12. At the time of the injury, however, the vessel was on land for temporary repairs. *Id.* at ¶ 7. Mr. Hoye-House claims that he is a Jones Act "seaman" who is entitled to remedies under the Jones Act for these alleged injuries. *See, e.g., id.* at ¶¶ 1, 13, 37 (alleging seaman

status). Defendants dispute that these facts qualify Mr. Hoye-House as a Jones Act seaman. ECF No. 9-1 at 1.

## II. STANDARD OF REVIEW

Because federal jurisdiction is limited, "[i]t is to be presumed that a cause [of action] lies outside this limited jurisdiction . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Likewise, "[t]he pleading standard for satisfying the factual predicates for proving jurisdiction is the same as applies under Rule 12(b)(6)—that is, the plaintiffs must state a claim to relief that is plausible on its face." *Lab. Rels. Div. of Constr. Indus. of Massachusetts, Inc. v. Healey*, 844 F.3d 318, 326-27 (1st Cir. 2016) (internal quotation marks omitted) (citations omitted). Additionally, the Court must "construe the [c]omplaint liberally and treat all well-pleaded facts as true, according the plaintiff the benefit of all reasonable inferences." *Hajdusek v. United States*, 895 F.3d 146, 148 (1st Cir. 2018) (alteration in original) (citation omitted).

In Jones Act cases, determining "who is a 'member of a crew,' and therefore who is a 'seaman,' is a mixed question of law and fact." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 369 (1995) (citations omitted). While statutory interpretation of terms like "seaman" rests with the Court, "[i]f reasonable persons, applying the proper legal standard, could differ as to whether the employee was a member of a crew, it is a question for the jury." *Id.* (alteration in original) (internal quotation marks omitted) (citations omitted).

## III. DISCUSSION

Defendants' arguments effectively reduce to two issues. First is whether Mr. Hoye-House qualifies as a Jones Act seaman.[1] *See* ECF No. 9-1 at 4-8. Second is whether a case or controversy existed between Mr. Lambden and Mr. Hoye-House. *See id.* at 4. The Court addresses each issue in turn.

### A. Whether Mr. Hoye-House qualifies as a Jones Act Seaman

Defendants first argue that Mr. Hoye-House does not qualify as a Jones Act seaman, and thus this Court lacks jurisdiction over the case.[2] ECF No. 9-1 at 1. Because there is not diversity among the parties, the injuries alleged here would have to be remedied in state court under state tort law absent Jones Act remedies (i.e., absent a federal question). The United States Congress passed the Jones Act to provide remedies "for sea-based maritime employees whose work regularly exposes them to the special hazards and disadvantages to which they who go down to sea in

---

[1] While the claims on the merits may turn on the issues discussed here, the Court cannot properly reach those claims without first establishing that it has jurisdiction to hear the case.

[2] Defendants also argue that Mr. Hoye-House cannot claim admiralty and maritime jurisdiction under the locality test. ECF No. 9-1 at 1. That is, claims for injuries that occurred on vessels could still be brought in federal court (under admiralty and maritime jurisdiction) even though the injured person is not a Jones Act seaman. *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995) (requiring that "a party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity"). Here, despite asserting this jurisdictional provision in his Complaint (*see* ECF No. 1 at ¶ 30), Mr. Hoye-House quickly dismisses its relevance in his response. ECF No. 11 at 9-12. Even so, because the Court ultimately requires discovery on the jurisdictional issues, the facts to support this alternative theory of jurisdiction will be developed. And the issue of whether Mr. Hoye-House desires to—or even can—revive this alternative jurisdictional theory is for another time.

ships are subjected." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 370 (1995) (internal quotation marks omitted) (citation omitted). Accordingly, the United States Supreme Court has held that, to qualify as a seaman: 1. One must maintain an "employment-related connection to a vessel in navigation"; and 2. One's duties must "contribut[e] to the function of the vessel or to the accomplishment of its mission." *Id.* at 357 (internal quotation marks omitted). Here, the answers to these two questions turn on facts that have not been fully developed.

A vessel need not be on the water all the time for it to be in navigation. *Stewart v. Dutra Constr.*, 543 U.S. 481, 496 (2005). For example, "[s]evere damage to a vessel or the need for major repairs are not, by themselves, sufficient to" say that the vessel is no longer in navigation. George Rutherglen, *Dead Ships*, 30 J. MAR. L. & COM. 677, 680 (1999) (footnote omitted); *see also Stewart*, 543 U.S. at 496 ("A ship long lodged in a drydock or shipyard can again be put to sea, no less than one permanently moored to shore or the ocean floor can be cut loose and made to sail."). The question thus becomes whether Godspeed was removed indefinitely from maritime activities. *See* Rutherglen, *supra*, at 679. Put another way, "Is the likelihood of actual use great enough to engage the underlying purposes of admiralty jurisdiction and, in particular, the need for a uniform body of national law to allocate the risks of maritime commerce?" *Id.* at 681. The facts in the Complaint are indeterminate on this issue. Godspeed sustained serious damage that resigned it to port. ECF No. 1 at ¶¶ 3-6. Yet it remains unclear what happened to the vessel in the intervening time since Mr. Hoye-House's alleged injury. Defendants may be inclined to suggest that

4

the vessel was in such a state of disrepair that it was out of maritime service indefinitely. While the facts in the Complaint could support such a conclusion, they do not mandate it. *See, e.g., id.* at ¶ 1 (alleging that Godspeed still requires repairs). The Complaint pleaded sufficient facts to make a finding of jurisdiction plausible, but important questions remain. What was the scope of the damage to Godspeed, and how did this damage affect its function? Did Godspeed plan to return to sea, and if so, when? If Godspeed remains at port today, why did it not leave?

The scope of Mr. Hoye-House's work also appears unclear. The Supreme Court has noted that "the key to seaman status is employment-related connection to a vessel in navigation." *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 355 (1991). This requirement exists "to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." *Chandris*, 515 U.S. at 368 (citation omitted). Yet "seamen do not lose Jones Act protection when the course of their service to a vessel takes them ashore." *Id.* at 361. All that the Complaint alleges is that Defendants[3] hired Mr. Hoye-House "as crew" (i.e., as a seaman) and that he "work[ed] aboard" Godspeed. ECF No. 1 at ¶¶ 1, 15. It does not speak to the breadth or duration of the work. Nor does it speak to Godspeed's intended use at the time and whether that intended use could be conducted. Again, the Complaint pleaded

---

[3] Because of the ambiguity regarding the relationships among the parties, the Court uses the collective term "Defendants" for ease. *See infra* note 4 (noting that the Complaint does not allege clearly the relationships among the parties).

5

sufficient facts to make a finding of jurisdiction plausible, but more facts are needed to flesh out whether Mr. Hoye-House's work related to Godspeed while it was in navigation.

### B. Whether a Case or Controversy Exists between Mr. Lambden and Mr. Hoye-House

Defendants next argue that no case or controversy exists between Mr. Lambden and Mr. Hoye-House because Mr. Lambden did not own Godspeed. ECF No. 9-1 at 4. Defendants contend that Mr. Hoye-House sued Mr. Lambden in his "individual capacity," and thus has no connection to the case. *Id.* But this contention misunderstands the allegations. The Complaint specifically alleges that Mr. Lambden may have employed Mr. Hoye-House and may have compensated him for his work. ECF No. 1 at ¶¶ 26, 28. Mr. Lambden also may hold marine insurance on Godspeed, and thus may retain some level of control over its operation.[4] *See id.* at ¶ 25. Still, one who is liable under the Jones Act need not be the vessel's owner or operator. *See, e.g., Dutra Grp. v. Batterton*, 139 S. Ct. 2275, 2279 (2019) (citation omitted) (noting that the duty of providing food, lodging, and medical services "does not rest upon negligence or culpability on the part of the owner or master, nor is it restricted to those cases where the seaman's employment is the cause of the injury or illness"). Mr. Lambden thus still could bear liability for his involvement in another

---

[4] The Complaint uses the language, "WHEELS, LTD., and/or ANDREW LAMBDEN," when referring to these actions. *Id.* at ¶¶ 25-26, 28. While such language equivocates, it does not wholly distance Mr. Lambden from the case, even though Mr. Lambden ultimately may be dismissed as a defendant. Discovery, therefore, is required to figure out the extent of Mr. Lambden's involvement.

capacity. The issue requires discovery to confirm the relationship between these two persons.

## IV.   CONCLUSION

The Court DENIES Defendants' Motion to Dismiss without prejudice. ECF No. 9. The Court further orders that discovery proceed for 90 days on only the two jurisdictional issues: Whether Mr. Hoye-House qualifies as a Jones Act seaman; and whether a case or controversy exists between Mr. Lambden and Mr. Hoye-House. Ninety days from the date of this Order, Defendants shall either file a new Motion to Dismiss or answer the Complaint.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

May 8, 2023